[Civ. No. 3760.   Third Appellate District.—April 29, 1929.]

LESLIE ALLERS, Appellant, v. BEVERLY HILLS LAUNDRY, INC. (a Corporation), Respondent.

Hays & Jacobson for Appellant.

Walter H. Hewicker and William B. Neeley for Respondent.

PRESTON (H. L.), J., *pro tem.*—This is an appeal from an order refusing to dissolve an attachment issued in favor of defendant.

The plaintiff, Leslie Allers, brought this action against defendant, Beverly Hills Laundry, Inc., a corporation, alleging in his complaint, "that between the 20th day of January, 1925, and the 16th day of March, 1927, . . . the plaintiff performed work, labor and services in the capacity of manager of the construction of the building, the installation of the machinery therein, and manager of the business of running the laundry, for the defendant at its special instance and request . . . That the services were reasonably worth the sum of $100 per week, making a total of $10960 . . . That the same has not been paid . . . except the sum

of $5381. Wherefore, plaintiff demands judgment against defendant for $5579 . . . ''

The defendant filed an answer in which it denied any indebtedness to plaintiff and also alleged, among other defenses, that all sums due or owing from it to plaintiff for labor or services had been fully paid.

The answer also contains this allegation: ''Admits that it has paid to plaintiff the sum of four thousand six hundred forty ($4,640.00) dollars, as salary for the period from August 22, 1925, to March 16, 1927, the day on which the employment of plaintiff with defendant was terminated. That plaintiff accepted said sum in full satisfaction of all claims and demands against defendant for services rendered to defendant during said period. Admits that it has paid to plaintiff the additional sum of seven hundred forty-one ($741.00) dollars, but that said sum of seven hundred forty-one ($741.00) dollars did not represent salary paid plaintiff, but represented money advanced to plaintiff.''

At the time of filing the answer, defendant also filed what is designated ''Counter Claim,'' which is in part as follows:

''That within two years last past, plaintiff became indebted to defendant in the sum of seven hundred forty-one ($741.00) dollars for money advanced to plaintiff's use by defendant. That plaintiff agreed to repay the same to defendant prior to the 16th day of March, 1927. That no part of said sum of seven hundred forty-one ($741.00) dollars has been paid, and that the whole thereof remains due, owing and unpaid.

''For a second, separate and distinct counter-claim defendant alleges as follows: That within two years last past, plaintiff became indebted to defendant in the sum of seven hundred forty-one ($741.00) dollars on an open book account. That said sum of seven hundred forty-one ($741.00) dollars became due and payable prior to March 16, 1927. That no part of said sum of seven hundred forty-one ($741.00) dollars has been paid, but that the whole remains due, owing and unpaid.''

After the answer and so-called ''counter-claim'' was filed, and on April 26, 1927, the defendant filed its affidavit for attachment against the property of plaintiff. The affidavit was made by the attorney for defendant, and states ''that

the plaintiff herein is indebted to defendant in the sum of $741.00, lawful money of the United States, over and above all legal setoffs and counter-claims, upon an express contract, for the direct payment of money, to-wit: for money advanced, and that such contract was made or is payable in this state, and that the payment of the same has not been secured by any mortgage or lien upon real estate or personal property, or any pledge of personal property . . . "

An undertaking was duly filed by defendant and the ·clerk issued a writ of attachment, which in due time was levied by the sheriff on fifteen shares of the preferred stock of the said Beverly Hills Laundry, Inc. Thereafter, and on April 28, 1927, the plaintiff made a motion to dissolve said attachment on the ground "that said attachment was erroneously and illegally issued . . . " The court, on May 21, 1927, made the following order: "Motion to release attachment heretofore submitted is now by the court denied."

.From this order plaintiff Leslie Allers prosecutes this appeal.

Appellant contends that said attachment was erroneously issued and that the trial court erred in refusing to dissolve it. This contention is based upon the claim that sections 537, 538, 539 and 540 of the Code of Civil Procedure do not permit an attachment to issue on a "counter-claim." No attack is made upon either the affidavit or undertaking.

Defendant has stated in its pleading a cause of action against plaintiff on an express contract for the direct payment of money in this state. It is, therefore, by virtue of having stated said cause of action against plaintiff, entitled to make, through its officers or attorney, the affidavit required by section 538 of the Code of Civil Procedure, and receive the benefits of the statute relating to attachments. If defendant Beverly Hills Laundry, Inc., had brought an independent action, stating the same facts in a complaint that it has in the pleading designated "counter-claim," and had made the same affidavit and filed the same undertaking, there could have been no question but that it would have been entitled to have an attachment issued. Defendant, having already been brought into court by the act of plaintiff himself to litigate their conflicting demands, we are unable to perceive why defendant Beverly Hills Laundry,

Inc., in order to secure the benefits of the statute on attachments, should be required to go to the trouble and expense of bringing an independent action against plaintiff, simply in order to be able to designate him in the complaint as "defendant" and itself as "plaintiff."

In sections 537 and 538 of the Code of Civil Procedure the legislative intent, it must be conceded, is not made as clear as might be desired. It is, however, safe to assume, in view of the purpose intended by the legislature, that it was not intended to afford one party a remedy not open to the other. We think it not unwarranted to assume that by the word "plaintiff," as used in these sections of the code, the legislature intended to mean the *claimant* or *moving party;* or, in other words, any party to the action seeking affirmative relief, who had brought himself within the provisions of said sections on attachments, whether he be designated in the complaint as plaintiff or defendant. We do not believe the legislature intended to limit the operation of the statute on attachments solely to the party designated in the complaint as "plaintiff."

If appellant's contention be sound, and only the party designated as "plaintiff" can receive the benefits of the statute on attachments, then any debtor could absolutely deprive a just creditor of his right to an attachment by being the first to institute suit against the just creditor on an insignificant claim, and thereby become the plaintiff in the action, and defeat the just creditor's right to an attachment. Certainly, this was not the intention of the legislature when it enacted sections 537 and 538 of the Code of Civil Procedure.

The appellant has discussed at some length the distinction between counterclaims and cross-complaints. We do not consider a discussion of the difference between a counterclaim and a cross-complaint at all essential to a proper disposition of this appeal, because it is immaterial how defendant designates its pleading. The allegations of a pleading determine its nature. Here the pleading in question is in the nature of a cross-complaint.

We think the case of *Interlocking Stone Co.* v. *Scribner,* 19 Cal. App. 344 [126 Pac. 178], supports the conclusion that we have reached in this case.

We think the order refusing to dissolve the attachment was proper and should be affirmed, and it is so ordered.

Plummer, J., and Finch, P. J., concurred.