[S. F. No. 749. In Bank.—January 6, 1898.]

WILLIAM F. THOMPSON, Petitioner, *v.* SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent.

INSOLVENCY—SALE BY ASSIGNEE—MOTION TO VACATE—GROUNDS OF EQUITABLE RELIEF.—Where an assignee in insolvency has made a sale by order of the court, which may be set aside upon equitable grounds, the assignee need not resort to a bill in equity, but may preferably move, the court which made the order to set it aside upon any ground of equitable cognizance, and the court will particularly entertain such application, where deception was practiced or a mistake induced by the act of the purchaser, due regard being had to the intervening rights of third persons.

ID.—SALE OF WATER PIPE—FRAUD OF PURCHASER—CONDITIONAL ORDER VACATING SALE—REIMBURSEMENT OF PURCHASER—JURISDICTION.—The superior court has jurisdiction to make a conditional order vacating a sale of waterpipe, made to a purchaser for much less than its value, by reason of his fraudulent representations as to the quantity of the pipe, which was unknown to the assignee, and such order may be conditioned upon the payment to the purchaser by the assignee of a sum sufficient to reimburse the purchaser for his outlay.

ID.—EXTINCTION OF OBLIGATION OF ASSIGNEE—COMPLIANCE WITH CODE—PAYMENT INTO COURT—DUTY OF PURCHASER—CONTEMPT.—The assignee may extinguish the obligation to pay money to the purchaser, imposed by the conditional order vacating the sale, by compliance with section 1500 of the code, and, if no tender or offer of payment could be made to the purchaser through his fault, he may make showing thereof to the court, and pay the money into court for the purchaser, and it would then be the duty of the purchaser to deliver the pipe to the assignee, and, upon refusal to do so, he would be in contempt, and might be committed until he should deliver it.

ID.—EX PARTE MODIFICATION OF ORDER—NOTICE OF HEARING ESSENTIAL—WANT OF JURISDICTION — CERTIORARI.—The court had no jurisdiction, on an *ex parte* application of the assignee, to modify the conditional order setting aside the sale, so as to make the order absolute, and

direct the delivery of the property, without payment of the money required by the conditional order to be paid to the purchaser, and such *ex parte* modification must be annulled upon *certiorari*.

Id.—PRIOR HEARING—DISMISSAL OF CONTEMPT PROCEEDING—REFERENCE TO AFFIDAVITS USED.—Where contempt proceedings against the purchaser, to which he was a party upon a prior hearing, were dismissed, the affidavits used thereupon have performed their function, and no subsequent *ex parte* application for a modification of the conditional order vacating the sale could be aided by reference to such affidavits.

CERTIORARI from the Supreme Court to review orders of the Superior Court of the City and County of San Francisco. Charles W. Slack, Judge.

The facts in reference to the orders reviewed are stated in the opinion of the court. A petition in intervention was filed in the Supreme Court by the Clarke's Water Works, claiming that the pipe in controversy was the property of that corporation.

George D. Collins, for Petitioner.

Alfred Clarke, for Clarke's Water Works, Intervenor.

Olney & Olney, for Respondent.

HENSHAW, J.—This is a hearing upon an original application for a writ of *certiorari*. The uncontradicted facts disclosed by the record are the following: The assignee of the estate of Alfred Clarke, an insolvent debtor, applied to the superior court sitting in the insolvency proceeding for permission to sell certain personal property of the estate of the insolvent. The property was second-hand waterpipe laid in the ground. An order of the court was obtained permitting the assignee to sell the pipe at private sale. He made two sales, and reported them to the court, stating that "he had sold six hundred feet of said pipe to William Long for the sum of sixty-four dollars, or at the rate of four cents per foot, and on the tenth day of June, 1896, had sold the remainder of said pipe to William F. Thompson for the sum of one hundred and twenty dollars." The sale was confirmed upon June 18, 1896. Thereafter the assignee resigned, and George P. Thurston was appointed in his stead. Thurston ever since has been and now is the duly qualified and acting assignee. Upon September 25,

1896, affidavits were presented to the court in insolvency in support of the assignee's application to have the sale of the waterpipe made to William F. Thompson vacated and set aside. One of these affidavits was that of Shepard, the former assignee. The basis of the application for the order, as appeared by the affidavits, was that the sale was made by the assignee and confirmed by the court under a mistake in fact as to the quantity and character of the pipe sold to Thompson, which mistake was induced by the fraudulent representations of Thompson to Shepard. It was shown that the assignee experienced great difficulty in ascertaining the kind and character and amount of the pipe: 1. By reason of the fact that it was covered over in the ground; and 2. Because the insolvent refused to answer any questions, or to give any information relative thereto; that the assignee under the fraudulent misrepresentations of Thompson was induced to believe and did believe that the quantity of pipe did not at the most exceed three thousand or four thousand feet, and that it was four-inch pipe of the value of four cents a foot, when in truth there were from ten thousand to fifteen thousand feet of the pipe, and some of it was six-inch pipe of greater value than four cents a foot. By reason of the fraudulent representations so made to him he made the sale of the pipe to Thompson, and reported it to the court, and the court in turn, being deceived by the representations of the assignee, became the victim of a mistake and deception thus intentionally put upon it by the purchaser, Thompson, and unintentionally by the assignee.

An order to show cause why the sale should not be vacated and set aside was served upon Thompson, and evidence taken upon the hearing. From this it appeared that the purchaser, Thompson, had been at some expense in removing portions of the pipe from the earth. The court, after hearing, made its order, finding that the sale was consummated by the then acting assignee of the estate and confirmed by the court, under a mistake of fact as to the amount of pipe included in the sale, which mistake was induced by the fraudulent misrepresentations of the purchaser, Thompson; that the sum of five hundred and twenty-five dollars was sufficient to recompense Thompson for his expenditures incurred in and about the sale, and to place him in the same position as he was in before the sale was made.

It therefore ordered that the assignee pay to Thompson the sum of five hundred and twenty-five dollars within ten days from the date of the order, and that upon the payment the sale be vacated and set aside, and that, if the sum of five hundred and twenty-five dollars was not within said period of ten days paid to said Thompson, then the order of sale and confirmation should stand as the order of court.   This order was made upon November 6, 1896; thereafter, and on the sixteenth day of November, 1896, other affidavits were presented to the court as the basis for an order directed to said Thompson to show cause why he should not be punished for contempt in refusing to deliver the pipe to the assignee.   Herein it was shown that Thompson and his attorney were present in court at the hearing of the application to vacate the sale, and were present at the time of the making of the order last set forth.   Thereafter, and within the ten days contemplated by that order, the assignee tendered to the attorney of Thompson the sum of five hundred and twenty-five dollars in gold coin.   No objection by the attorney was made to the form or sufficiency of the tender; but the attorney refused to accept the money, stating that his client, Thompson, would not take it.   After this tender to the attorney, numerous efforts were made to tender the money to Thompson personally, but the assignee was not able so to do, owing to the fact, as he alleges, that Thompson willfully and intentionally concealed himself in order to avoid a personal tender to him.   Upon this showing the court, upon November 16, 1896, made the following order:

"It is hereby ordered that on the eighteenth day of November, 1896, at the hour of 10 A. M., William F. Thompson appear before this court in Department Ten, to show cause, if any he have, why he should not be punished for contempt of this court in refusing to deliver to George P. Thurston, the assignee of the estate of Alfred Clarke, an insolvent debtor, the waterpipe, fittings, pumps, and other ironwork now held and claimed by said William F. Thompson by virtue of a sale made by said estate to said William F. Thompson on or about the eighteenth day of June, 1896, and set aside and vacated by this court the sixth day of November, 1896."

This matter coming on for hearing, it was urged in behalf of Thompson that he could not be adjudged guilty of a contempt, for that the order of November 6th did not direct him

to restore the personal property to the possession of the assignee. This view was accepted by the judge as correct, and the order to show cause was dismissed.

Thereafter, upon November 19, 1896, the assignee presented and filed his affidavit stating that he was entitled to the possession of the waterpipe; that William F. Thompson claimed it under a sale by the assignee of the insolvent's estate made on or about the eighteenth day of June, 1896, which said sale was vacated and set aside by the order above mentioned of November 6, 1896; that Thompson still has possession of the pipe, to the possession of which affiant is entitled. Upon the filing of this affidavit, without notice to Thompson, the court upon the same day made its order, absolute in form, requiring Thompson to deliver up to the assignee all property of the estate which he claimed under the sale made by the former assignee.

Following the issuance of this order a writ of review was sued for in this court and obtained.

The first attack is directed to the order of November 6th, by which the sale to Thompson is vacated conditionally upon the payment to him by the assignee of the sum of five hundred and twenty-five dollars. It is contended that this order is void for want of jurisdiction; that the title to the property having vested in the petitioner by the sale, he could not be divested of that title in such a proceeding. The rule, however, is quite otherwise. While the party seeking relief may resort to his bill in equity, he may—and, indeed, it is often the preferable practice—apply by motion to the court which has decreed the sale, and in applying to such court he may base his application upon any equitable principle of relief which would give jurisdiction to a court of equity in any other case of sale—fraud, mistake, accident, or other ground of purely equitable cognizance. And particularly will the court entertain such applications where the deception has been practiced or the mistake induced by the act of the purchaser. In all such cases due regard will be had to the intervening rights of third persons, but no such rights have here arisen. Amongst numerous authorities supporting this proposition may be instanced *Koontz v. Northern Bank*, 16 Wall. 196; *Hackley v. Draper*, 60 N. Y. 88; *Requa v. Rea*, 2 Paige, 339; *Strong v. Catton*, 1 Wis. 471; *Anderson v. Foulke*, 2 Harr. & G. 346; *Gordon v. Saunders*, 2 McCord Eq. 151;

*Brown v. Gilmor*, 8 Md. 322; *Collier v. Whipple*, 13 Wend. 224; *White v. Wilson*, 14 Ves. Jr. 151; *Houston v. Aycock*, 5 Sneed, 406; 73 Am. Dec. 131; Rorer on Judicial Sales, secs. 556, et seq.

It is next insisted that the order of November 19, 1896, by which the petitioner is directed to deliver up to the assignee all property of the estate claimed by him under the sale, is void, and this contention, we think, must be sustained. A purchaser at a sale under a decree of a court of chancery, or under the order of a probate or insolvency court, submits himself to the jurisdiction of the particular tribunal, as to all matters connected with such sale or relating to him in his character of purchaser. (*Requa v. Rea, supra.*) Therefore it is that, upon motion before the court decreeing the sale, it may be set aside upon any ground of equitable cognizance. But no man may be divested of his property, or of his right to property, without process of law. As a jurisdictional prerequisite he is entitled to his notice and his hearing, and only after such notice and hearing may the action of the court be upheld. The order of November 6th was in all respects a proper order. The purchaser was served with notice and was granted a hearing. After such notice and hearing the court made its order vacating the sale upon condition, namely, that within a specified time the purchaser should be restored to his former position by the payment to him of the sum of five hundred and twenty-five dollars. The order of November 16th, based upon the affidavits of the assignee that he was unable to make the tender contemplated, was likewise a proper order. By its terms it prescribed a notice to be given to the petitioner, and an opportunity was accorded him to be heard and show cause why he should not deliver up the property. This proceeding ended favorably to the petitioner, the court agreeing with his contention that there was nothing in its preceding order requiring him to deliver the property. The rule was discharged, and the petitioner stood purged of contempt. Thereafter, upon the *ex parte* application of the assignee, based upon an affidavit essentially inaccurate in its statement of facts, the court, without notice served or hearing granted to the purchaser, made its order absolute requiring him to deliver up to the assignee all property claimed by Thompson under a sale, "which sale [so runs the order] was vacated and set aside by this court on the

sixth day of November, 1896." Herein is found the same in-
accuracy referred to in the affidavit. The sale had not been va-
cated and set aside by the order of November 6th. At the most
it was to be vacated after condition performed by the assignee.
The order of November 6th, while not a judgment, yet possessed
many of the essentials and characteristics of a judgment. The
later order of November 19th contains a drastic modification of
the order of November 6th, in that it requires the purchaser ab-
solutely and without condition to restore the property. Before
such a modification so vital to his rights could be made he was
entitled to be heard.

Nor can the order under consideration be supported by refer-
ence to or employment of the affidavits used in support of the
hearing had upon November 18th, and this for many reasons:
First, those affidavits were offered in support of an application
that the purchaser be punished for contempt. He was notified
of the proceeding, given an opportunity to be heard, and after
hearing the proceeding against him was discharged. The affi-
davits then had performed their office. Again, if, as the as-
signee contended, the purchaser was evading a tender, a
compliance with section 1500 of the Civil Code would have ex-
tinguished the assignee's obligation to pay, which otherwise re-
mained in full force. And, finally, if it were permissible to use
the affidavits in support of the order of November 19th, the fact
still remains that the order was made in the absence of and
without notice to the purchaser, and therefore with no oppor-
tunity afforded him to make his defense to a determination
which deprived him absolutely and without condition of the pos-
session of his property.

The order of November 6th did not require the modification
attempted to be made by the order of November 19th. The
assignee could have extinguished his obligation to pay by a com-
pliance with section 1500 of the Civil Code, or could have made
his showing before the court that he was unable to tender the
money to the purchaser through fault of the latter, and then have
paid the money into court for the benefit of the purchaser. The
condition imposed upon him by the order of November 6th thus
being performed, if the purchaser had thereafter refused to de-
liver the pipe, he would have been in contempt of the very terms
of the order of November 6th, and, upon cause shown and after

hearing, the court could with propriety have committed him in contempt until he had delivered the pipe. And all this without any modification of the order of November 6th. The court, however, seems to have labored under the misapprehension that a modification of the order of November 6th was necessary, and the order of November 19th was designed as such modification. In effect the order of the 19th is a redetermination of the question, and is equivalent to a judgment that the purchaser turn over the property without repayment to him of his outlay. Such a redetermination—since these proceedings are in the nature of and take the place of a hearing in equity—could only be had after notice and a hearing to the purchaser.

The order of November 19, 1896, is therefore vacated and annulled.

The application of the assignee made herein that petitioner be required to give a bond is denied.

McFarland, J., Temple, J., Garoutte, J., Van Fleet, J., Harrison, J., and Beatty, C. J., concurred.